## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREG BARKLEY, individually and as<br>parent and natural guardian of D.B., a<br>minor,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>WESTMORELAND COUNTY<br>CHILDREN'S BUREAU, WESTMORELAND<br>COUNTY, AMY FONTANA, individually<br>and in her capacity as an employee of<br>Westmoreland County Children's Bureau, and<br>HEATHER TINKEY<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)　　Civil Action No. 2:11-cv-00983<br>)<br>)　　Judge Mark R. Hornak<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

Before the Court is the Motion to Dismiss Plaintiffs' Amended Complaint filed by Westmoreland County Children's Bureau, Westmoreland County, and Amy Fontana ("County Defendants"). The Court has reviewed Plaintiffs' Amended Complaint (Doc. No. 9), Defendants' Motion to Dismiss (Doc. No. 10), and the various briefs in support of and in opposition to the Motion to Dismiss (Doc. Nos. 11-13). For the reasons that follow, Defendants' Motion to Dismiss will be granted in part and denied in part.

## *I.* *BACKGROUND*

When reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts all of the factual allegations in the Amended Complaint as true and draws all reasonable inferences in Plaintiffs' ("Barkley's") favor. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211-12 (3d Cir. 2009). Therefore, for purposes of disposition of County Defendants' Motion to Dismiss, the essential facts are as follows.

Plaintiff Greg Barkley is the father and natural guardian of the minor Plaintiff D.B. He brings this suit in these capacities and on his own behalf.[1] Barkley maintained primary physical custody of D.B. while residing in Tennessee. When D.B. was three and a half years old, he was diagnosed with Duchene's Muscular Dystrophy. As a result of this disorder, D.B. has been without ambulatory movement in his legs for approximately the last five and one-half years. He depends upon a custom-fit, electric wheelchair for his mobility. This wheelchair ensures proper support of D.B.'s back by lessening the curvature of his spine. As part of his physical care, D.B.'s legs and arms must be stretched on a nightly basis to prevent loss of movement.

In May 2009, Defendant Heather Tinkey, D.B.'s natural mother, picked up D.B. and his minor sister from the children's Tennessee residence and took them to her residence in Stahlstown, Pennsylvania. Tinkey was unable to transport D.B.'s electric wheelchair and therefore used D.B.'s manual wheelchair, which lacks specialized back support.

Tinkey agreed to return D.B. and his sister to Barkley in Tennessee in early June 2009. She failed to do so, causing D.B. to miss a physician's appointment set for July. In late July 2009, Barkley contacted his local sheriff's department in Tennessee, whose representative contacted the sheriff's department in Westmoreland County, Pennsylvania. The Tennessee

---

[1] Other than the assertions of damages in paragraphs 74 and 79 of the Amended Complaint, there are no specific allegations of harm sustained by Mr. Barkley.

sheriff requested that a deputy sheriff warn Tinkey that the children must be returned to Tennessee by August 2, 2009 or a warrant would issue for her "interference with custody." On or about July 30, 2009, a Westmoreland County law enforcement officer went to Tinkey's residence and issued such a warning.

On August 3, 2009, Barkley filed a custodial interference warrant against Tinkey in civil court in Tennessee to force Tinkey to return D.B. and his sister to their Tennessee home. Approximately three days later, Barkley was served with a Pennsylvania Protection from Abuse Order (PFA). Tinkey had secured this PFA from the Court of Common Pleas of Westmoreland County, alleging Barkley's wife, Kim Barkley, had abused D.B.

On or about August 7, 2009, Westmoreland County officials received the custodial interference warrant from Tennessee. A lieutenant of the Westmoreland County Sheriff's Department instructed Barkley to arrange to pick up D.B. and his sister on the day the warrant would be issued. In accordance with this instruction, Barkley arrived in Pennsylvania on August 9, 2009. However, he was notified the following day by a Westmoreland County Sheriff's Department representative that the Tennessee warrant would not be served on Heather Tinkey because of the PFA issued against Barkley by the Westmoreland County Court.

In late August 2009, the Court of Common Pleas of Westmoreland County gave temporary custody of D.B. and his sister to Heather Tinkey. Then, on September 10, 2009, the Westmoreland County court reversed its custody decision and ordered the Westmoreland County Sheriff's Department to execute the Tennessee warrant on behalf of Greg Barkley. Consequently, in mid-September 2009, Tinkey was arrested in Pennsylvania on the custodial interference warrant. The Court of Common Pleas of Westmoreland County placed D.B. and his

sister in the custody of the Westmoreland County Children's Bureau ("WCCB"), the employer of Defendant Fontana.

Barkley asserts that, pursuant to the WCCB's recommendation, the Westmoreland County court placed D.B. and his sister in the home of their maternal grandmother and grandfather, Leona and John Tinkey. Barkley alleges that the grandparents were "known alcoholics." He further claims that he made this fact known to Defendant Fontana, informing her that the Tinkey residence was not "a safe place" for his children, particularly given D.B.'s physical condition.

On September 16, 2009, Heather Tinkey was released from custody on bond. Less than a week later, Barkley received a phone call from a family member advising him that D.B. was complaining that his left leg hurt and that he was crying in pain. Barkley reported D.B.'s condition to the Tennessee Department of Children and Family Services. Later that day, the Tennessee official notified Fontana[2] by telephone that D.B. was "seriously injured." According to Barkley, Fontana took no action, failing to seek any medical treatment for D.B. or to investigate his physical condition.

In early October 2009, as Barkley took D.B. back to his residence in Tennessee, he noticed that D.B.'s left leg was swollen and that movement caused severe pain. D.B. advised Barkley that Heather Tinkey had put him (D.B.) in the back seat of a four-door truck without securing him with a seatbelt. When Tinkey suddenly slammed on the brakes, D.B. was thrown to the floor. His left leg was bent severely in the fall. Barkley claims that Heather Tinkey was driving the truck because Leona Tinkey (the maternal grandmother) could not operate a vehicle, because her driver's license was suspended due to numerous DUI convictions.

---

[2] At oral argument, counsel for Barkley also stated that Barkley made D.B.'s condition known to Fontana directly.

4

Upon arriving in Tennessee, D.B.'s leg was examined by his physician and an orthopedic specialist. The doctors determined, via X-rays, that D.B. had sustained a Salter II fracture of the distal femur. Based on the test results, the orthopedic surgeon believed that the fracture occurred in September 2009, when D.B. was in John and Leona Tinkey's custody and care due to WCCB's placement decision.

Barkley alleges that since these events, D.B. has suffered significant physical deterioration, emotional distress, and other harm. Barkley claims that County Defendants, while acting under the color of state law, recklessly and in a grossly negligent manner failed to protect D.B. from harm. Barkley further alleges that County Defendants failed to provide D.B. with appropriate protective services and with necessary and proper medical treatment. These failures, Barkley claims, violated his and D.B.'s rights secured by the Fifth and Fourteenth Amendments of the United States Constitution.[3]   Barkley also asserts in Count II of the Amended Complaint a supplemental claim under Pennsylvania law solely against Defendant Heather Tinkey for common law negligence.[4]

County Defendants seek to dismiss the claims asserted against them on the basis that they are absolutely immune from constitutional liability as to Barkley's claim of "interference with custody" over D.B. They contend further that to the extent Barkley challenges the underlying Pennsylvania state court proceedings affecting D.B.'s custody, that challenge is barred as a matter of law by the *Rooker-Feldman* doctrine. *See generally Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

---

[3] Barkley's claim under the Fifth Amendment appears to be wholly inapplicable to this case. The Fifth Amendment's "due process" component applies only against federal, rather than state, actors. *B & G Const. Co., Inc., v. Dir., Office of Workers' Comp. Programs*, 622 F.3d 233, 246 n.14 (3d Cir. 2011); *Banks v. Mozingo*, 423 Fed. App'x 123, 128 (3d Cir. 2011). Barkley does not name or implicate any federal entity in his Amended Complaint.

[4] The record does not reveal that Heather Tinkey has been served and no appearance has been entered on her behalf, matters stipulated to by counsel at oral argument on the instant motion.

County Defendants also assert that Barkley's claims against Fontana in her official capacity warrant dismissal because they are duplicative of claims against the WCCB and Westmoreland County. Additionally, County Defendants allege that all claims against them under the Fourteenth Amendment are subject to qualified immunity and that the claims against Westmoreland County and the WCCB should be dismissed because they are little more than claims for *respondeat superior* liability barred by *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Finally, County Defendants assert that all claims for punitive damages should be dismissed.

The matter having been fully briefed and presented at oral argument, the motion to dismiss is now ripe for disposition.

## II.    *LEGAL STANDARD*

In considering a Rule 12(b)(6) motion, federal courts require notice pleading, as opposed to the heightened standard of fact pleading. *See Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds on which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)) (internal quotations omitted).

Building upon the landmark United States Supreme Court decisions of *Twombly* and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the United States Court of Appeals for the Third Circuit recently explained that a district court must take three steps to determine the sufficiency of a complaint:

6

> First, the Court must "take[e] note of the elements a plaintiff must plead to
> state a claim." Second, the Court should identify allegations that,
> "because they are no more than conclusions, are not entitled to the
> assumption of truth." Third, "whe[n] there are well-pleaded factual
> allegations, a Court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief." This means
> that our inquiry is normally broken into three parts: (1) identifying the
> elements of the claim, (2) reviewing the complaint to strike conclusory
> allegations, and then (3) looking at the well-pleaded components of the
> complaint and evaluating whether all of the elements identified in part one
> of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Iqbal*, 129 S.Ct. at 1947, 1950)

(internal citations omitted).

The third step of the sequential evaluation requires this Court to consider the specific

nature of the claim(s) presented and to determine whether the facts pled to substantiate the

claims are sufficient to sow a "plausible claim for relief." *See Iqbal*, 129 S. Ct. at 1950. While

legal conclusions can provide the framework of a complaint, they must be supported by factual

allegations. *Id.*; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

The Court may not dismiss a complaint merely because it appears unlikely or improbable

that a plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550

U.S. at 556. Instead, the Court must ask whether the facts alleged raise a reasonable expectation

that discovery will reveal evidence of the necessary elements. *Id.* Generally speaking, a

complaint that provides adequate facts to establish "how, when, and where" will survive a

motion to dismiss. *Fowler*, 578 F.3d at 212; *see also Guirguis v. Movers Specialty Services,*

*Inc.*, 346 Fed. App'x 774, 776 (3d Cir. 2009). In short, a motion to dismiss should not be

granted if a party alleges facts which could, if established at trial, entitle him to relief. *Fowler*,

578 F.3d at 213.

## III.    DISCUSSION

<u>County Defendants' Actions Relating to D.B.'s Placement
with His Maternal Grandparents</u>

As to the defense that County Defendants are absolutely immune from liability, the defendants rely on *Ernst v. Child & Youth Services*, 108 F.3d 486 (3d Cir. 1997). While *Ernst* does shield Fontana[5] from many of Barkley's assertions, County Defendants read *Ernst* too expansively in contending that it precludes all of Barkley's claims. In *Ernst*, our Court of Appeals specifically declined to create blanket absolute immunity for social workers in all situations involving care of a dependent child, whether on a permanent or temporary basis. *Id.* at 497 n.7. In doing so, the appellate court emphasized that its holding concerned only actions taken by child welfare workers in the context of judicial dependency proceedings and that absolute immunity does not apply to investigative or administrative actions taken by child welfare workers outside of the this context. *Id.*

To the extent Barkley challenges the WCCB's decision to place D.B. with his maternal grandparents, or any recommendations made by the WCCB to the Westmoreland County Court of Common Pleas regarding D.B.'s placement, *Ernst* bars those claims as to Fontana. 108 F.3d at 495. However, *Ernst* does not shield Fontana's alleged inaction when dealing with any actual or perceived physical injury to D.B. after his placement with his maternal grandparents. A causal and temporal break exists between the original placement orders entered by the Westmoreland County Court of Common Pleas and the allegation that Fontana took no action when she knew or should have known that D.B., who suffers from a profound medical condition, had sustained a severe physical injury. The latter claim falls sufficiently distant from the roles of the WCCB and/or Fontana in the judicial custody proceedings as to be outside of the *Ernst* orbit.

---

[5] The doctrine of absolute immunity, if applicable, shields an individual caseworker from liability, but does not extend to the employing entity. *Ernst*, 108 F.3d at 497.

Substantively, as a general matter, a claim that a social worker's actions violated the substantive due process rights of a minor child must be based on facts supporting a finding that the challenged actions or inaction "shocks the conscience." *A.M. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 579 (3d. Cir. 2004). In the foster care context, in order to shock the conscience, the caseworker's behavior must demonstrate "deliberate indifference" to the child's needs. *Co. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998); *see Nicini v. Morra*, 212 F.3d 798, 810 (3d Cir. 2000) (citing multiple foster care cases, each utilizing some form of the deliberate indifference standard). Our Court of Appeals has also stated that a social worker's actions should be analyzed on a case-by-case basis, and, in certain circumstances, her actions must far exceed negligence and deliberate indifference, reaching a level of "gross negligence" or "arbitrariness" before a claim may lie. *Miller v. City of Philadelphia*, 174 F.3d 368, 375-76 (3d Cir. 1999); *Studli v. Children & Youth Families Central Reg'l Office*, 346 Fed. App'x 804, 811 (3d Cir. 2009).

Here, even the most expansive reading of the Amended Complaint would not support Barkley's claim that County Defendant's adherence to the orders of the Court of Common Pleas of Westmoreland County, which placed D.B. in the WCCB's custody and then, through the WCCB, with his maternal grandparents, could constitute deliberate indifference, gross negligence, or arbitrariness. Consequently, to the extent Barkley asserts liability against County Defendants for the activities occurring prior to Fontana's claimed knowledge of D.B.'s serious leg injury, such claims fail to meet the threshold necessary for a Fourteenth Amendment violation. Thus, Barkley's claim against County Defendants regarding D.B.'s placement is

dismissed with prejudice, because it is both insufficient to meet the necessary substantive due process standards and, as to Fontana, is barred by absolute immunity per *Ernst*.[6]

*County Defendants' Actions Post-Placement*

Barkley also alleges that the County Defendants violated his and D.B.'s substantive due process rights secured by the Fourteenth Amendment via their alleged inaction after receiving the report that D.B. had suffered a severe leg injury while in the custody of his maternal grandparents. As to that claim, the Court concludes that this allegation, while not overpowering, does meet the legal threshold to avoid dismissal.

In order to dismiss this claim, the Court would have to conclude, at this early stage of the proceedings and prior to any discovery or other factual development, that no rational jury could find that Fontana's actions shocked the conscience because her actions fail to reach a level of gross negligence, arbitrariness, or deliberate indifference. The Court cannot so conclude, given the pre-existing serious physical condition of D.B. and the allegations that Fontana, acting on behalf of the WCCB, took no action whatsoever after being advised by Tennessee child protection officials of the injury to D.B.'s leg. Barkley asserts that he possesses medical evidence that this injury was serious and caused long-term harm to D.B. The events leading to D.B.'s injury occurred while he was in supervised custody, for which the WCCB and Fontana had responsibility.

As to Westmoreland County and the WCCB, it is axiomatic that neither entity can be held liable as a common law tortfeasor under the doctrine of *respondeat superior*. *Monell v.*

---

[6] In the same vein, to the extent the Amended Complaint could be construed broadly as challenging the validity of the judicial orders that initially placed D.B. with the WCCB and, through the agency, with his maternal grandparents, it is at least plausible that the *Rooker-Feldman* doctrine, as explained by its progeny, might apply. *See generally Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005); *Great W. Mining Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010). However, the Court need not resolve the precise contours of the application of *Rooker-Feldman* here, given the applicability of absolute immunity and the insufficiency of Barkley's substantive due process claim.

*Department of Social Services*, 436 U.S. 658, 692-93 (1978). Instead, a section 1983 claim against a municipal entity requires the plaintiff to show that the entity's policies, practices, or procedures were the "moving force" behind the alleged constitutional violation. *Id.* at 694. A municipality's practices include its employee training regimen, and a municipality may be held liable for a failure to train its employees when such failure elicits a "deliberate indifference" to the rights of the persons whom the employees will come into contact. *Carter v. City of Philadelphia*, 181 F.3d 339, 356-57 (3d Cir. 1999). However, a plaintiff must claim a specific training deficiency, not rely on formulaic language contained within *Monell* and its progeny. *Burke v. Twp of Cheltenham*, 742 F. Supp 2d 660, 675 (E.D.Pa. 2010). In other words, "bald assertions" regarding a lack of appropriate procedures will not suffice. *Id.*

Barkley has alleged (albeit not robustly) that the practices, policies, and procedures in place at Westmoreland County and the WCCB caused significant harm to himself and D.B. He claims specifically that the WCCB and Westmoreland County do not provide their caseworkers with the training necessary for supervising and assisting children with special, medical needs, like D.B. While this allegation is not a hallmark example of detailed pleading, it is sufficient to allow Barkley's *Monell* claim to proceed at this point. The parties' engagement in the discovery process will determine if there is a legally sufficient factual predicate for the assertion of liability against the defendant municipal entities. If not, these claims will presumably depart the case on summary judgment.

### *Punitive Damages Claim*

Defendants are correct that punitive damages are not available against governmental entities in claims brought under the Fourteenth Amendment to the Constitution. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). This includes claims against

11

government officials in their official capacities. *See id.* The *Newport* doctrine, however, does not bar such claims against government officials found liable for a constitutional violation in their individual capacity. *See Doe v. County of Centre, Pa.*, 242 F.3d 437, 457-58 (3d Cir. 2001); *Keenan v. City of Philadelphia*, 983 F.2d 459, 469-470 (3d Cir. 1992). Consequently, Barkley's punitive damages claim against County Defendants, except as to those asserted against Fontana in her individual capacity, will be dismissed with prejudice.

### *The Claim against Fontana in Her "Official Capacity"*

The County Defendants are also correct that any constitutional claim against Fontana in her "official capacity" is for all intents and purposes to be treated as claims against County Defendants. *McMillan v. Monroe County*, 520 U.S. 781, 785 n. 2 (1997). Barkley's assertion, therefore, amounts to legal surplusage. At this stage, however, the Court will not dismiss this claim in order to allow the parties to engage in discovery to determine what actions or inactions by Fontana (if any) were within her individual or official capacities.

### *Qualified Immunity*

Finally, County Defendants' claim that all of their actions were protected by the doctrine of qualified immunity. The doctrine of qualified immunity bars the assertion of constitutional liability against government officials, unless they violated a clearly-established statutory or constitutional right that a reasonable person in the official's situation would have known at the time of the alleged injury. *Schneyder v. Smith*, 653 F.3d 313, 318 (3d Cir. 2011). The Court concludes that the claims asserted here, to the extent proven at trial, would be for a violation of constitutional rights that were clearly established at the time of the alleged violations. While the parties dispute the application of settled legal principles to the facts alleged in the Amended Complaint, neither County Defendants nor Plaintiffs contend that a new or novel rule of law or

12

its application is implicated by the Amended Complaint. Consequently, the claim of qualified immunity must be denied.

## IV.   CONCLUSION

For the reasons set forth above, all claims for punitive damages against County Defendants, except as to Fontana in her individual capacity, are dismissed. All claims against the County Defendants alleging a violation of the Fifth Amendment of the United States Constitution are dismissed. All claims against the County Defendants alleging a violation of the substantive due process rights secured by the Fourteenth Amendment to the Constitution are dismissed, except to the extent the Amended Complaint asserts a claim against the County Defendants directly relating to (a) injuries occurring to D.B. and Barkley as a consequence of the alleged failure of Fontana and the other County Defendants to make a timely and appropriate assessment of his needs after he was supposedly injured while riding in a truck driven by Heather Tinkey, (b) the subsequent failure to provide D.B. with appropriate care in those circumstances, and (c) the obligation of County Defendants to maintain and adhere to training and operational policies and procedures which would have avoided the harms alleged.[7]

Mark R. Hornak
United States District Judge

Dated: 2-15-12

---

[7] Given the applicable legal standards for the assessment of constitutional liability, further amendments to the complaint would be futile. Therefore, these dismissals are with prejudice.

13